EVERETT H. READ, BY. CHARLES D. READ, NEXT FRIEND, *v.*
ELIAKIM AMIDON, APPELLANT.

### *Innkeeper. Bailment.*

The plaintiff, who was a minor, went with his father, with a horse and wagon, to the inn
kept by the defendant, to attend the trial of a suit which the innkeeper had brought against
the father. When they arrived the horse and wagon were delivered to the servant of the
defendant, to be put up and taken care of; and the plaintiff and his father entered the inn
where the defendant was in charge, and laid aside their overcoats in the room where they
entered, and in presence of the defendant. In due time the father called for dinner for
himself and the plaintiff, which they had; and they remained at the inn until evening,
when the bill was paid and they left. *Held*, that the relation of innkeeper and guest was
thereby created between the plaintiff and the defendant.

A guest is not relieved from all responsibility in respect to his goods on entering an inn. He
is bound to use reasonable care and prudence in respect to their safety, so as not to expose
them to unnecessary danger of loss.

A guest having laid his gloves down under his overcoat on a bench in the presence of the
innkeeper, it was a question of fact to be determined by the jury in view of all the circum-
stances, whether he was so careless with respect to his gloves as to exonerate the innkeeper
from liability for their loss.

ACTION on the case against the defendant as an innkeeper.
Plea, not guilty. Trial by jury, April term, 1867, BARRETT,
J., presiding.

Before the trial the defendant conceded that he was an inn-
keeper. The plaintiff called as a witness Charles D. Read, who
testified as follows:

"The plaintiff is my son, and went with me to the de-
fendant's in November, 1865, for the purpose of attending a
suit that the defendant had brought against me. The plaintiff rode
with me in a one-horse team, which was put up at the defendant's
by his brother. The defendant was in the bar-room. He knew
I and my son put up there. He saw us go in. The plaintiff had
a pair of fur gloves, worth $9 to $11. We both had overcoats.
I took off mine and tried to find a place to hang it up but couldn't,
and folded it and laid it on a bench to sit on. The plaintiff took
off his coat and gloves, laid the gloves on the end of the bench,
and folded his coat and laid it over them. The defendant might
have known we were looking for a place to hang up the coats.
Don't know as he did know it. The plaintiff was there at dinner,
not at tea. The horse had hay and grain. The defendant made
a charge for the plaintiff and the team, and it was paid. When
the plaintiff was about to go away, he couldn't find his gloves.
Don't know that he called on the defendant for them. The

plaintiff came to me, said his gloves were gone and he couldn't find them, and wanted I should go to the defendant for them. I paid the bills, and told the defendant the gloves were gone. He said he didn't know anything about them, and made no effort to find them. There was no other room shown to go into to take off coats, etc. A fire was afterward made in another room for holding the court."

Said witness, on being cross-examined, testified as follows:

"We drove up to the door, a person took the horse, I told him to put him in the barn and feed him. Don't think I informed the defendant when we went in, that I was there as his guest, nor that I had delivered my horse to his man. Shook hands with him. Along toward noon, about 12 o'clock, I told him I wanted dinner for four or five, and horse to have grain. This might have been two hours after I arrived. Didn't tell the defendant I wanted any place or room to put clothing in. There was no other place in that room to put clothing. Didn't hear the plaintiff say anything to the defendant about his being a guest there, nor hear the plaintiff call for any entertainment. I called for it for him and another one, and paid for dinner for him, and for the horse-keeping, and for dinner and horse-keeping for witnesses and counsel. Think I was paying the bill when the plaintiff spoke to me of loss of gloves. This was near or after dark. It was dark when we started for home. I told the defendant the plaintiff had laid his gloves on the bench and they were gone. He said he didn't know about them. Told him the plaintiff wanted them to go home. We started off in fifteen minutes."

Upon this evidence the plaintiff rested his case; whereupon the court directed a verdict for the defendant, to which the plaintiff excepted.

*H. H. Wheeler*, for the plaintiff.

When the plaintiff and his father went to the defendant's inn and put up their team, they both became his guests. Story on Bail., 505; 26 Vt., 333, 334.

Being there to attend a suit brought by the defendant, made them none the less guests. Gen. Sts., 281, § 33–36; 3 Bac. Ab., 662, C, 664, 3.

The plaintiff's gloves were within the defendant's inn so as to make the defendant chargeable for them. Cayle's case, 8 Coke, 32; 1 Smith's L. C., 148; Jones on Bail., 106; Story on Bail.,

507; 2 Kent, 593; *Bennet* v. *Mellor*, 5 D. & E., 273; *Richmond* v. *Smith*, 8 B. & C., 9.

*Charles N. Davenport*, for the defendant.

There was no error in the ruling of the county court.

The plaintiff was not at the time he lost the gloves the defendant's guest. "*Guest*" — a lodger or stranger in an inn. Jac. Law Dic., tit. " GUEST."

The case shows a degree of negligence on the part of the plaintiff that precludes him from recovery. 1 Parsons, 625, *et seq.* and notes; *Farnsworth et al.* v. *Rockwood*, 1 Starkie, 249; *Burgess* v. *Clements*, 4 Maule & Sel., 306; *Armistead* v. *White*, 6 Eng. L. & E., 349.

Another and sufficient reason for sustaining the judgment of the court below, is that the case shows that the plaintiff retained personally the possession of the gloves, and never placed them in the defendant's custody. 1 Parsons on Con., 631, 626, 627; Jones on Bail., 109; *Mason* v. *Thompson*, 9 Pick., 280. "The test of liability is not the place where the goods are deposited, but whether they are in the custody of the innkeeper, or at the risk of the guest." *Piper* v. *Manny*, 21 Wend., 283; *Allen* v. *Presby*, 8 N. H., 408.

By the civil law, it was not sufficient to create the responsibility, that the guest had brought his goods or baggage to the view or knowledge of the innkeeper, but they must have been delivered into his charge. Story on Bail., § 466, § 468. And by the common law as it now seems to be settled in England and America, the goods must be received into the custody of the innkeeper, *in that capacity.* Story on Bail., § 487; *Hawley* v. *Smith*, 25 Wend., 642; 1 Smith's L. C., 229; *McDaniels* v. *Robinson*, 26 Vt., 316.

There are authorities in the books to the effect that innkeepers are responsible to the same extent as common carriers, but such is not the law in Vermont. *Merritt* v. *Claghorn*, 23 Vt., 177.

The opinion of the court was delivered by

PIERPOINT, C. J. This is an action brought against the defendant as an innkeeper, to recover for property of the plaintiff which

2

was lost from the inn of the defendant while the plaintiff was stopping at such inn as a guest.

It appears from the case that in November, 1865, the plaintiff, who was a minor, went with his father, with a horse and wagon, to the inn kept by the defendant. When they arrived the horse and wagon were delivered to the servant of the defendant to be put up and taken care of, and the plaintiff and his father entered the inn where the defendant was in charge. They laid aside their outer garments in the room where they entered and in presence of the defendant. In due time the father called for dinner for himself and the plaintiff, which was had ; and they remained at the inn until the evening, when the bill for the entertainment and feed of themselves and horse, was paid, and, as they were preparing to leave, the plaintiff discovered that a pair of valuable gloves which he had laid aside when he entered, had been stolen.

The circumstances under which the plaintiff entered the inn of the defendant, were such as to constitute him a guest, and create the relation of innkeeper and guest between them, according to the principle of all the authorities. *McDaniels* v. *Robinson*, 26 Vt., 316, and cases there referred to.

When the plaintiff entered the inn and took off his overcoat and gloves, he did not deliver them to the defendant or to any of his servants, nor call the defendant's attention to them ; but folded up his coat and laid it on a bench in the room, with his gloves under it. It does not appear that the defendant had any knowledge of their being there. Story, in his work on bailments, says, a delivery of the goods into the custody of an innkeeper, is not necessary to charge him with them ; for, although the guest doth not deliver them, nor acquaint the innkeeper with them, still the latter is bound to pay for them, if they are stolen or carried away. The loss will be deemed *prima facie* evidence of negligence.

The innkeeper, however, may be exonerated in divers ways ; as, for example, by showing that the guest has taken upon himself exclusively the custody of his own goods, or has by his own neglect exposed them to peril. Story on Bail., § 478, § 480, § 482, § 483 ; 2 Kent, 593 ; 8 B. & C., 9 ; 5 D. & E., 273.

The guest is not relieved from all responsibility in respect to his goods on entering an inn; he is bound to use reasonable care and prudence in respect to their safety, so as not to expose them to unnecessary danger of loss. Whether the plaintiff was so careless, in laying down his gloves in the manner he did, as to exonerate the innkeeper, is a question of fact to be determined by the jury in view of all the circumstances. What would be regarded as gross carelessness under one set of circumstances, might not be so considered under other circumstances; much would depend upon the place, the number of people present, the kind of property as to its value, and the ease with which it might be removed without detection, etc.

Whether the circumstances existing in this case were such as to exonerate the defendant, by removing the presumption against him which the law raises from the loss of the property, is a question which, we think, should have been submitted to the jury under proper instructions from the court.

Judgment reversed, and case remanded.