### Shaw *versus* Berry.

An innkeeper's liability for goods and chattels, stolen or injured at his inn, extends beyond his own fidelity and that of his servants.

He is responsible for *well* and safe keeping.

He is bound to keep the goods and chattels, so that they shall be *actually* safe, except against inevitable accidents, and the acts of public enemies, and of the owners of the property, or of their servants.

Proof that there was no negligence in himself or in his servants, is not sufficient for his immunity.

Case against an innkeeper, for an injury to the plaintiff's horse, while at the defendant's stable.

The horse was placed at the stable in the evening, and one of his hind legs was found, in the morning, to have been broken above the gambrel joint. The evidence tended to show, that he was treated with care and faithfulness, that he was placed in a safe and suitable stall, with sufficient and suitable bedding; and that the injury happened without the fault of any one.

The Judge instructed the jury, *that* the rule of law applicable to common carriers, was not applicable to innholders;

*that* the law, in case of injury to goods or property, while in the custody of the innkeeper, presumes it to happen through his negligence or fault, and would hold him responsible for it, unless he could prove, (the burden being on him,) that he was guilty of no fault; and *that* if the defendant had proved that he was not in fault, the action could not be maintained. The verdict was for the defendant, and the plaintiff excepted.

*Evans*, for the plaintiff.

Innkeepers are liable to the same extent as common carriers. *Mason* v. *Thompson*, 9 Pick. 280; 5 Term, 274; 1 McCord, 509; 21 Wend. 282; 12 Pick. 306. 2 Kent's Com. 594, says, "rigorous as this law may seem, and hard as it actually may be in some cases, it is, (as Sir Wm. Jones observes,) founded on the principles of public utility, to which all private considerations ought to yield. Travelers, who must be numerous in a rich and commercial country, are obliged to rely almost implicitly on the good faith of innkeepers, and it would be almost impossible for them, in any given case, to make out proof of fraud or negligence in the landlord."

This is the very reason assigned by writers, for the strictness in the law of common carriers; the danger of combinations and the difficulty of proof. 9 Pick. 280; Story on Bailments, § 490, 491.

Between the liabilities of these two classes of bailees, no just distinction can be taken; both for hire; both entrusted exclusively with the property; both having great opportunities of fraud; both protected by their situation, against proof of misconduct; both bound to receive articles. 2 Comstock, 209.

*Paine*, for the defendant.

Innkeepers are not responsible to the same extent as common carriers. Loss of the goods will be presumptive evidence of negligence. He may repel that presumption by proof. Story on Bailments, § 472, 482; 12 Mod. 480; 2 Kent's Com. 4th ed. 592, 3; *Dawson* v. *Chamney*, 5 Q. B. 164;

*Dickman* v. *Rogers,* 4 Humph. 179; *Hill* v. *Owen,* 5 Blackf. 323.

*Calye's case,* 8 Coke, 32, is the leading case. Not liable, unless some fault in the innkeeper or his servants.

. *Mason* v. *Thompson,* cited on the other side, was a case of theft. Theft is *conclusive* evidence of negligence. This is different. There can be no inducement for a landlord to *injure* property.

What is an act of God? Is it any thing more than an inevitable casualty? And what is an inevitable casualty, but a casualty which happens in spite of human care and vigilance? The horse breaks his leg, and the keeper has done all he could do to prevent it. Has Divine Providence no means of executing its purpose, but the thunder bolt?

TENNEY, J. — In the case at bar is involved the question, to what extent an innkeeper is responsible for the horse or goods of his guest, whom he entertains for hire. It has been held by some courts and jurists, that his liabilities are similar to those of common carriers; others have considered the law less rigorous towards him. *Calye's case,* reported in 8 Coke, 32, has long been regarded as the leading case upon this subject; and in some respects, a difference of opinion has existed, as to its doctrines. In that case, according to the report, "it was resolved by the whole court, that if a man comes to a common inn, and delivers his horse to the hostler, and requires him to put him to pasture, which is done accordingly, and the horse is stolen, the innkeeper shall not answer for it, for the words of the writ, which lieth against the hostler are, "cum, secundum legem et consuitudinem regni nostri Angliæ, hospitatores, qui hospitia communia tenent ad hospitandos homines per partes ubi hujusmodi hospitia existent transeuntes et in eisdem hospitantes, eorum bona et catalla infra hospitia illa existantia absque subtractione seu amissione custodire die et nocte tenentur, ita quod pro defectu hujusmodi hospitatorum · seu serventium suorum hospitibus hujusmodi damnum non eveniat ullo modo."

From parts of the commentary in the report in *Calye's case*, upon the language of the writ just quoted, it has been supposed by some, that innkeepers are liable only for the want of fidelity, in themselves and their servants. It is therein said, " the words are, *ita quod pro defectu hospitatorum seu serventium suorum, &c. hospitibus hujus modi damnum non eveniat*, by which it appears that the innkeeper shall not be charged, unless there be a default in him or his servants, in the well and safe keeping and custody of their guest's goods and chattels, within his common inn ; for the innkeeper is bound by law to keep them safe, without any purloining or stealing."

Judge Story, in his treatise upon bailments, on the authority of *Calye's case*, as well as other decisions, says, " But innkeepers are not responsible to the same extent as common carriers. The loss of the goods while at an inn will be presumptive evidence of negligence on the part of the innkeeper or of his domestics. But he may, if he can, repel this presumption, and show that there has been no negligence whatsoever ; thus, although a common carrier is liable for all losses occasioned by an armed mob, (not being public enemies,) an innkeeper would not be liable for such a loss." Sect. 472. But the commentator thinks that this doctrine should be stated with some hesitation, in view of the case of *Richmond* v. *Smith*, 8 Barn. & Cres. 9, where a different view of the law seems to be entertained. Again, in sect. 482, he says, " By the common law, as laid down in *Calye's case*, an innkeeper is not chargeable, unless there is some default in him or in his servants, in the well and safe keeping and custody of his guest's goods and chattels, within his common inn, but he is bound to keep them safe, without any stealing or purloining. This doctrine, however, is to be understood with this qualification, that the loss will be deemed *prima facie* evidence of negligence, and that the innkeeper cannot exonerate himself, but by positive proof, that the loss was not by means of any person for whom he is responsible."

If *Calye's case* is further examined, it is believed that this interpretation is not authorized in all respects. After the language quoted by Judge Story in *Calye's case*, the report goes on and says, " and it is no excuse for the innkeeper to say, that he delivered to the guest the key of the chamber where he lodged, and that he left the chamber door open ; but he ought to keep the goods and chattels of his guest there in safety, and therewith agrees, 22 Hen. 6, 21, (b) ; 11 Hen. 4, 45, (a) and (b) ; 42 Edw. 3, 11, (a). And although the guest doth not deliver the goods to the innholder to keep, nor acquaints him with them, yet if they be carried away or stolen, the innkeeper shall be charged, and therewith agrees 42 Edw. 3, 11, (a). And although they who stole or carried away the goods, be unknown, yet the innkeeper shall be charged. 22 Hen. 6, 38 ; 8 R. 2 Hostler, 7 ; *vide* 22 Hen. 6, 21. But if the guest's servant, or he who comes with him, steals or carries away his goods, the innkeeper shall not be charged ; for the fault is in the guest to have such a companion or servant." From the whole commentary upon this point in the case, it fully appears, that an innkeeper is responsible for the goods of his guest, which may be stolen from his inn ; and the construction, to be adopted, when the whole report is examined, is, that the liability does extend beyond the fidelity of the innkeeper and his servants, in the common acceptation of the term. He is responsible for the *well* and *safe keeping*, &c. He is bound to keep the goods and chattels so that they shall be actually safe ; inevitable accidents, the acts of public enemies, the owners of the goods and their servants, excepted. Proof that there was no negligence in the innkeeper or his servants, is not sufficient for his immunity. And herein no question arises in regard to the burden of proof. It is not necessary for the guest to prove negligence to support his action ; nor will proof by the innkeeper, that he was guilty of no negligence, be an excuse, unless he brings himself within those cases which are excepted. And it is believed that such is the current of authorities. In Comyn's Digest, vol. 1, page 298, in reference to *Calye's case*, it is said, " an innkeeper is not

liable, and an action will not lie, if the goods are lost without any fault of the innkeeper," but the import of this language is qualified by that which immediately follows; "as if the guest order his horse to be put into the pasture, and he is lost there, without any neglect of the innkeeper."

It was held in *Bennett v. Miller*, 5 Term R. 273, that if an innkeeper refuse to take the charge of goods till a future day, because his house is full of parcels, he is liable to make good the loss, if the servant of the plaintiff in charge of the goods stop as a guest, and the goods be stolen during his stay. ASHURST, J. remarked, "If it had appeared, as the defendant's counsel have suggested, that these goods were lost through the negligence of the plaintiff's servant, the case would have deserved further consideration, but nothing of that kind appeared in the Judge's report." And in the same case, BULLER, J. says, in reference to the passage from 1 Com. Dig. 298, which had been cited for the innkeeper, that the action does not lie, *if the goods are lost without any fault of the innkeeper*, "cannot be supported if taken in a general sense, for all the authorities agree, that it is not necessary to prove negligence in the innkeeper."

In the case of *Burgess v. Clements*, 4 M. & Sel. 306, Lord Ellenborough uses the following language. — "The law obliges the innkeeper to keep the goods of persons coming to his inn, *causa hospitandi* safely, so that in the language of the writ *pro defectu hospitatoris damnum non evenat ullo modo*." And afterwards, "the cases show that the rule is not so inveterate against the innkeeper, but that the guest may exonerate him by his fault, as if the goods are carried away by the guest's servant, or the companion, whom he brings with him, for so it is laid down in *Calye's case*." The principle seems to be recognized, that such keeping the goods of the guest as would be a protection for an ordinary bailee for hire, will not relieve the innkeeper from responsibility; but that he is not chargeable when the loss happens through the negligence of the guest, or those for whom he is responsible.

*Kent v. Shackford*, 2 B. & Ad. 803, was a case, where an

action was brought against an innkeeper, to recover the value of a bag containing bank notes, lost by the plaintiff during the time he resided as a guest at the defendant's inn ; on plea of not guilty it appeared, that the plaintiff, his wife and another lady, Miss Stratford, took a sitting-room and two bed-rooms at the inn, so situated, that the door of the sitting-room being open, a person there could see the entrance into both the bed-rooms. The plaintiff's wife laid a reticule, containing the money, on her bed, and afterwards returned into the sitting-room, leaving the door between that and the bed-room open. After remaining in the sitting-room about five minutes, she sent Miss Stratford for the reticule, and it was not to be found. It was not contended for the defendant, that upon these facts he would not be liable for *goods* and *chattels*, but he denied that money was either. Lord Tenterden, C. J. said, "there are many cases, where money has been recovered in an action against carriers, who like innkeepers are liable by the custom of the realm ; and I cannot see any distinction in this respect between an innkeeper and a common carrier. The principle, on which an innkeeper is liable for the loss of the goods of his guest, is both by the civil and common law to compel the innkeeper to take care, that no improper persons be admitted into the house, and to prevent collusion between him and such persons. In the Dig. lib. 4, tit. 9, § 1, after stating the law, that an innkeeper is liable for the goods of his guest, it is said, *Nisi hoc esset statutum, materia daretur cum furibus adversus eos quos recepiunt conniti.* If we should grant the present rule, we should break in upon that principle. If a lady were to leave a valuable shawl in her room, the innkeeper (though unacquainted with its value) would clearly be responsible for it, if lost.

*Richmond* v. *Smith*, 8 B. & Cres. 9, was, where a traveler, on going into an inn, requested that his baggage should be taken into the commercial room, to which he resorted, from whence it was stolen. It was decided that the innkeeper was responsible, although he proved, that according to the

usual practice of his house, the baggage would have been deposited in the guest's room, and not in the common, if no order had been given respecting it. The Lord C. BARON told the jury, that the defendant was in the situation of a carrier, and could not get rid of his common law liability, unless by giving express notice. And on a motion for a new trial, Lord TENTERDEN, C. J., said, " It is clear, that at common law, when a traveler brings goods to an inn, the landlord is responsible for them. The situation of the landlord was precisely analagous to that of a carrier, and that the direction given to the jury was right." In the same case, BAYLY, J. said, " It appears to me, that an innkeeper's liability very closely resembles that of a carrier. He is *prima facie* liable for any loss not occasioned by the act of God or the king's enemies, although he may be exonerated, when the guest chooses to have the goods under his own care."

The case of *Clute* v. *Wiggins*, 14 Johns. 175, recognizes the doctrine that innkeepers are chargeable for the goods of their guests, lost or stolen out of their inns; and to render them liable, it is not necessary that the goods should be delivered into their special keeping, nor to prove negligence.

In Massachusetts, it has been decided that innkeepers, as well as common carriers, are regarded as insurers of the property committed to their care, and are bound to make restitution for any injury or loss not caused by the act of God or the common enemy, or the neglect or fault of the owner of the property. *Mason* v. *Thompson*, 9 Pick. 280.

Chancellor KENT, in reference to the liability of innkeepers, says, " In general he is responsible for the acts of his domestics and for thefts, and is bound to take all possible care of the goods and baggage of his guests deposited in his house or intrusted to the care of his family or servants." He remarks, that it is laid down in *Calye's case*, that the innkeeper was bound absolutely to keep safe the goods of his guest deposited within the inn, and whether the guest acquainted the innkeeper, that the goods were there or did not; and that he would in every event, be bound to pay for the

goods, if stolen, unless they were stolen by a servant or companion of the guest.

The cases decided, make no distinction between the subtraction or loss of the goods on the one hand, and injury to them on the other, so that the innkeeper would be relieved from responsibility in the latter cases, when he would be liable in the former.

The jury were instructed, that the rule of law applicable to common carriers was not applicable to innholders, and that if the defendant had proved that he was not in fault, then he would be exonerated and the action could not be maintained. The jury must have understood, that if the defendant and his servants had conducted with such care and prudence as is required of bailees for hire generally, and that negligence was not imputable to them, he could not be holden for the loss. All these facts may have been proved and he might still be liable for the injury sustained by the plaintiff. The evidence adduced may have satisfied the jury that the injury to the horse was the result of inevitable accident. But under the instructions, it was not necessary that such should be the finding to authorize a verdict for the defendant.

It is not perceived that the rulings in the admission of evidence, which was objected to, were erroneous.

*Exceptions sustained.*