# SULLIVAN,

## JULY TERM, A. D. 1856.

---

### SIBLEY v. ALDRICH.

An inn-keeper is liable for damage happening in his inn to the goods of his guest, unless it is caused by the act of God, or the public enemy, or by the fault, direct or implied, of the guest. To discharge the inn-keeper it is not enough to show that the damage did not happen through his actual negligence or that of his servants.

THIS action was case, for damage done to the plaintiff's horse while in the possession and keeping of the defendant as an inn-keeper, and was referred to a commissioner, who made his report, stating the following facts:

The defendant was the keeper of a common inn at West Swanzey, but had no taverner's license. On the 22d of June, 1854, James Wheeler, the servant of the plaintiff, was received into the defendant's inn as a traveller, and at the same time brought with him and delivered to the defendant the plaintiff's horse, which the defendant received and put into the stable used in connection with the inn. Afterwards, in the same afternoon, Wheeler informed the defendant that the horse was tied so short that he could not feed, when the defendant gave the horse more rope. During the night following the horse was kicked by the horse of another traveller, tied in the next stall, and his leg broken. About a week afterwards the horse of the plaintiff was killed by his direction. The stalls in which the horses were

placed were separated by a partition, five feet and one inch in length from the manger, which was not of sufficient length.

On trial before the jury the defendant offered evidence to prove that the damage to the plaintiff's horse did not happen through any actual negligence of the defendant, or his servants ; but the court excluded the evidence. Thereupon a verdict was taken, by consent, for the plaintiff, to be set aside, or judgment rendered thereon, as the court should order.

*Cushing*, for the defendant.

In this case the court found among other matters that the stalls were not of sufficient length, which was, if the fact was so, a negligence on the part of the defendant. The defendant proposed to rebut this, and show that the accident did not happen by want of any sufficient care on his part, either in regard to stalls or in any other particular. The question then arises as to the inn-holder's liability. Is he absolutely liable for all property *infra hospitium*, or is the allegation that the accident happened through the fault of the inn-holder and his servants a material allegation, which must be proved, the fact of the loss being only *prima facie* evidence of the neglect. The latter is the true doctrine. *Dawson* v. *Chamney*, 5 Adol. & Ellis 164.

*Barton*, (with whom were *Metcalf & Wheeler*,) for the plaintiff.

The evidence offered by the defendant before the jury was properly rejected by the court below.

The case finds that the plaintiff's horse, at the time of receiving the injury therein set forth, was in the possession and keeping of the defendant as an inn-keeper.

Inn-keepers are responsible for the safe keeping of the goods and chattels of their guests, brought with them into the inn. They are held responsible on the same ground and to the same extent as common carriers. 2 Kent's Com. 592, sixth edition.

Inn-keepers are regarded as insurers of the property committed to their care by their guests, and are bound to make restitution for any injury or loss, not caused by inevitable accident, or

the acts of public enemies, or the fault of the owner or his servants. 9 Pick. 280, and authorities there cited. Nor can an inn-keeper discharge himself from such liability by alleging that the goods were left under the special care of the guest himself. *Bennet* v. *Mellor*, 5 Term 273 ; *Calye's Case*, 8 Co. 32.

It is not necessary to prove negligence in the inn-keeper. He is responsible for well and safe keeping of his guests' goods. He must keep them so that they shall be actually safe, subject to inevitable casualty, &c. Nor will proof that there was no negligence on his part or that of his servants rid him from liability. *Shaw* v. *Berry*, 31 Maine 478. The latter case was similar to the case at bar, and the leading English and American cases on the extent of the inn-keeper's liability were carefully reviewed. *Piper* v. *Mansey*, 1 McCord 509 ; 21 Wendell 282 ; *Richmond* v. *Smith*, 8 Bar. & Cress. 9 ; *Quinton* v. *Courtny*, 1 Hayward N. C. 40 ; *Clute* v. *Wiggin*, 14 Johns. 175.

*Dawson* v. *Chamney*, cited on the other side, and relied upon as establishing a different principle as to the liability of inn-keepers, does not seem to be supported by the rule laid down in Calye's Case, upon which it is made to rest. Authorities cited in *Shaw* v. *Berry*.

The allegation that the accident happened through the negligence of the inn-holder and his servants, is not material, and need not be proved.

PERLEY, C. J. The defendant offered to prove that the damage to the plaintiff's horse was not caused by any actual negligence of himself or his servants. He did not offer to prove that it happened through the negligence or default of the plaintiff, direct or implied ; nor by irresistible force, inevitable accident, or by the act of God, or the public enemy. The question would seem to be whether, as a general rule, and in all cases, an inn-keeper can discharge himself from liability for the loss of his guest's goods by showing that it did not happen by the actual neglect or default of himself or his servants.

On this point the authorities are not unanimous. Story, in

his work on Bailments, sec. 482, says, " By the common law, as laid down in Calye's Case, an inn-keeper is not chargeable unless there is some default in him or in his servants, in the well and safe keeping and custody of his guest's goods and chattels within his common inn, but he is bound to keep them safe, without any stealing or purloining ;" quoting thus far the language of the Report in Calye's Case, and then he adds, " This doctrine is, however, to be taken with the qualification that the loss will be deemed *prima facie* evidence of negligence." And in section 472, he says, that this doctrine should be received with some hesitation, in view of the case of *Richmond* v. *Smith*, 8 B. & C. 9, where a different view of the law seems to have been entertained. Story's authority on a question of this nature is undoubtedly of great weight; but it is to be observed that he states his opinion with some hesitation, and he does not appear to have reached a conclusion in this instance, after his usual extensive and careful examination of the authorities.

In *Dawson* v. *Chamney*, 5 A. & E. (N. S.) 165, it was held that when goods have been deposited in a public inn, and there lost or injured, the presumption is that the loss or damage was caused by the negligence of the inn-keeper or his servants ; but that this presumption may be rebutted, and if the jury find in favor of the inn-keeper as to negligence, he is entitled to succeed on a plea of not guilty. Lord *Denman* cited Story as authority for this rule. The circumstances of *Dawson* v. *Chamney* were much like those of the present case. The plaintiff gave his horse in charge to the defendant's ostler, who placed him in a stable with another horse, that kicked him and caused the injury complained of.

*Metcalf* v. *Hess*, 14 Illinois 129, is to the same point, that an inn-keeper may discharge himself by showing that the loss happened without any default on his part. The foregoing authorities go to sustain the position of the defendant.

In *Merrill* v. *Clagthorne*, 23 Vermont 177, the court held that an action cannot be maintained against an inn-keeper to recover for property lost by fire, which was occasioned by inevitable cas-

ualty, or superior force, and without any negligence on the part of the inn-keeper or his servants. This last case is put on peculiar grounds, and cannot be regarded as an authority for the general position that an inn-keeper may discharge himself by showing that the loss did not happen by his default. The fire took in another building and spread to the inn.

So in *Kesten* v. *Hildebrand*, 9 B. Monroe 72, it was held that an inn-keeper is *prima facie* liable, but not for a loss by external force or robbery, or if the loss occur by the neglect of the guest or his servants or companions. *Forward* v. *Pittard*, 1 T. R. 27, 31.

On the other hand, there are numerous authorities, direct and strong, to the point that the inn-keeper cannot discharge himself by showing that the loss did not happen by his default, but that he must go farther, and show that it was caused by the default, direct or implied, of the owner.

Thus Chancellor *Kent*, 2 Com. 574, says: "An inn-keeper, like a common carrier, is an insurer of the goods of his guest, and can only limit his liability by express agreement or notice. Rigorous as this law may seem, and hard as it may actually be in some instances, it is, as Sir *William Jones* observes, founded on the principle of public utility, to which all private considerations ought to yield. *Metcalf*, in his note to *Bedell* v. *Morris*, Yelverton 162, places the liability of an inn-keeper and common carrier on the same footing, and so does the civil law. Domat, B. 1, T. U., sec. 2, a, 1. *Burgess* v. *Kent*, 4 M. & S. 306, was much considered. The point there decided was, that an inn-keeper is not answerable for the goods of his guest, which are lost through the negligence of the guest out of a private room in the inn, chosen by the guest for the purpose of exhibiting the goods for sale, the use of which room was granted by the inn-keeper, who, at the same time, told the guest that there was a key, and that he might lock the door, which he neglected to do. In commenting on Calye's Case and the language of the old writ, Lord *Ellenborough* is reported to have said, "There can be no doubt also that there may be circumstances, as if the guest by his own neglect induces the loss, or himself introduces the

person who purloins the goods, which form an exception to the general liability, as not coming within the words, *pro defectu hospitatoris*, and under such circumstances the plaintiff shall not complain of the loss." And *LeBlanc*, J., in the same case, says, " We must take the facts from the report, and also that the judge stated to the jury that the inn-keeper was responsible to his guest for the safe custody of his goods, but that the guest might by his own misconduct discharge the inn-keeper from that responsibility." Here the general responsibility of the inn-keeper for the safety of his guest's goods is clearly conceded : The decision is put on the ground of misconduct in the guest, which caused the loss, without any intimation that mere want of negligence in the inn-keeper would discharge him. *Tamunth* v. *Packard*, 1 Starkie 249, is to the same point with *Burgess* v. *Kent*.

In *Richmond* v. *Smith*, 8 B. & C. 9, Lord *Tenterden* says : " It is clear that at common law, when a traveller brings goods to an inn, the landlord is responsible for them. In this respect I think the situation of the landlord was precisely analogous to that of a common carrier ;" and *Bailey*, J., in the same case, says, " It appears to me that an inn-keeper's liability very closely resembles that of a common carrier. He is *prima facie* liable for any loss not occasioned by the act of God or the king's enemies, although he may be exonerated when the guest chooses to have the goods under his own care."

In *Kent* v. *Shackford*, 2 B. & Ald. 803, Lord *Tenterden* is reported to have used the following language : " Inn-keepers, like common carriers, are liable by the custom of the realm. The principle on which the liability of an inn-keeper for the loss of the goods of his guest is founded, is, both by the civil and common law, to compel the inn-keeper to take care that no improper person be admitted into his house, and to prevent collusion between him and other persons. In the Digest, L. 4, T. 9 ; sec. 1, after stating the law that an inn-keeper is liable for the goods of his guest it is said, *nisi hoc esset statutum materia daretur cum furibus adversus eos, quos recipiunt, coeundi.*"

*Amistead* v. *White*, 6 Law & Eq. 349, was an action against

an inn-keeper, and the judge charged the jury that if the owner of the goods was guilty of *gross* negligence, the inn-keeper was discharged.    The court held the instructions were sufficiently favorable to the plaintiff, and queried whether it was necessary that the negligence of the plaintiff should be *gross*, to discharge the defendant.    It is not easy to understand why the cause should have been left to the jury in this way, if the doctrine of the prior case of *Dawson* v. *Chamney* had been recognized for law, and it is worthy of remark that no allusion is made to *Dawson* v. *Chamney* in the Report of *Amistead* v. *White*.

In *Mason* v. *Thompson*, 8 Pick. 280, it was decided that an inn-keeper is liable for the loss of his guest's goods committed to his care, unless the loss is caused by the act of God, or the common enemy, or by the fault of the guest.    And *Wilde*, J., in delivering the opinion of the court, says that this rule may undoubtedly in some cases subject the inn-keeper to loss without any negligence or default on his part ; that inn-keepers, as well as common carriers, are regarded as *insurers* of property committed to their care, and are bound to make restitution for any loss or injury not caused by the act of God or the common enemy, or the neglect or fault of the owner.    And it was decided in *Washburn* v. *Jones*, 14 Barb. 193, that an inn-keeper is liable for all losses and damages happening, even without his default, excepting such as are caused by inevitable accident or the public enemy.

The question was very fully and ably discussed in the recent case of *Shaw* v. *Berry*, 31 Maine 478, and the court there came to the conclusion that to discharge an inn-keeper from liability for the loss of goods in his charge, it is not sufficient for him to show that the loss did not happen by his neglect or default, but that he must go further and show that it happened by the fault, direct or indirect, of the owner.

The leading case on this subject is Calye's, 8 Co. 32, a., in which the point resolved was, that if a horse is put out to pasture at the request of the owner by an inn-keeper, and is stolen, the inn-keeper is not liable, because the horse, not being *infra*

*hospitium,* is not in the charge and custody of the inn-keeper as such, and his liability as an inn-keeper does not attach. The report recites the words of the old writ, and states that by it all the cases concerning ostlers may be decided. The part of the writ which bore on the point resolved, was that which limits the liability of the inn-keeper, by the custom of the realm, to goods of the guest *infra hospitium ;* and in commenting on the language of the writ the reporter says, that " the inn-keeper shall not be charged unless there be a default in him or his servants in the well and safe keeping and custody of the guest's goods *within his common inn ;* for the inn-keeper is bound in law to keep them safe *there,* without any stealing or purloining, but he ought to keep his goods and chattels *there* in safety." Considering the connection of these remarks with the point resolved in the case, we think they could not have been intended to lay down any rule defining the extent of the inn-keeper's liability for goods in. his custody as such, but merely to state that his liability was confined to goods deposited in the inn.

The case then proceeds to state an exception to the rule that the goods within the common inn the inn-keeper ought to keep in safety, to wit: that if the goods are stolen by one whom the guest brings with him, the inn-keeper is not liable, for then the fault is the guest's. There is no statement in the report that actual negligence is necessary to charge the inn-keeper, or that he can discharge himself by showing that the goods were not lost by his actual negligence.

The language of the old writ has sometimes been made the ground of an inference that there must be actual negligence to charge an inn-keeper. The writ recites : " that by the custom of the realm inn-keepers are bound to keep the goods of their guests within their common inn, without substraction or loss, night and day, *ita quod pro defectu hujus modi hospitatorum sed servientium suorum,*" no damage shall in any manner befal such guests. The inn-keeper is bound to keep the goods of his guest so that no damage happen by his default or that of his servants. The argument is that the term *pro defectu* implies actual fault and

negligence.   But the inn-keeper is sued for neglecting to per-
form his legal duty ; and the question occurs what is the duty
which the law and the custom of the realmn imposes on him ?
If the law holds him to keep the goods of his guest at all events,
except in case where the loss happens by the act of God, or the
public enemy, or by the fault of the guest, then if the goods are
lost by mere accident, or by robbery, without any want of actual
care on his part, the inn-keeper has still failed to perform his
legal obligation, and the goods are lost by his neglect and failure
to perform the duty which the law imposes.   The law in such
case charges the inn-keeper with the duty of keeping the goods
safely, and imputes to him the fault, if they are lost or damaged.

In this view of their meaning these words of the writ are by
no means idle and unmeaning, because the inn-keeper is not in
all cases liable for the loss of goods entrusted to his care.   The
loss may happen by the act of God, by the public enemy, or by
the fault of the owner, and in that case the damage does not
happen by the default of the inn-keeper.   If the declaration
should merely allege that the goods were lost or damaged, without
averring that the loss or damage happened by default of the
inn-keeper or his servants, it is apprehended that it would be
substantially defective and bad on demurrer, on the strictest rule
which has been applied to the inn-keeper's liability.

This argument from the form of pleading might be urged with
equal force to show that a common carrier is only liable for loss
that happens by his actual negligence.   In the settled form of
declaring in case against a carrier it is alleged, that the defend-
ant, " neglecting his said duty in that behalf, did not safely and
securely carry," &c., " but so negligently and improperly con-
ducted himself, that by and through the negligence, carelessness
and default of the defendant," the goods were lost or damaged.
Angell on Carriers 429, note ; *Raphael* v. *Pickford,* 5 Manning
& Granger 551 ; 2 Chitty's Pl. 271, 272.

And in the ancient form of declaring against a common car-
rier the custom of the realm is alleged to be that " *absque sub-
stractione, amissione, seu spoliatione, portare tenentur, ita quod*

*pro defectu dictorum communium portatorum, seu servientium suorum hujus modi bona et catalla, eis sic ut prefertur deliberata, non suit perdita, amissa, seu spoliata;*" and in assigning the breach it was alleged that "*pro defectu bonæ custodiæ ipsius defendentis et servientium suorum perdita et amissa fuerunt.*"

Three different rules appear to be laid down on this subject in different authorities.

1. That the inn-keeper is *prima facia* liable for the loss of goods in his charge; but may discharge himself by showing that the goods were not lost by his negligence or default, and this is the ground taken by the defendant in the present case. This view of the law is sustained by *Dawson* v. *Chamney*, 5 A. & E., n. s, 165, and by *Metcalf* v. *Hess*, 14 Illinois 129.

2. That the inn-keeper is discharged by showing how the accident happened, and that it happened by inevitable accident, or irresistible force, though the accident might not amount to what the law denominates the act of God, and the force might not be the power of a public enemy. This rule is countenanced by *Merrill* v. *Clagthorne*, 23 Vermont 177, and *Kesten* v. *Hildebrand*, 9 B. Munroe 92.

3. That the inn-keeper is liable, unless the loss was caused by the act of God, or the public enemy, or by the fault, direct or implied, of the guest. This rule is maintained in *Burgess* v. *Kent*, 4 M. & S. 306; *Richmond* v. *Smith*, 8 B. & C. 9; *Tamunth* v. *Packard*, 1 Starkie 249; *Kent* v. *Shackford*, 2 B. & Ad. 803; *Armistead* v. *White*, 6 L. & E. 349; *Mason* v. *Thompson*, 8 Pick. 280; *Shaw* v. *Berry*, 31 Maine 478.

Of text writers, Story, though with hesitation, goes for the first rule. Kent states the third rule strongly, and Metcalf adopts the same, and the civil law places the liability of the inn-keeper and the common carrier on the same footing.

It is somewhat singular that on a practical question, which must be as old as the rudiments of the law, there should be found at this day such diversity of opinion and decision. It is probably owing to the obscure way in which the subject is treated in the report of Calye's Case, and the different interpretations

which have been put on that case. On the whole we think that the better rule is the strict one, as laid down in the elaborate and very satisfactory case of *Shaw* v. *Berry*. The weight of authority is heavily that way, and the policy and analogies of the law lead to the same conclusion.

*Judgment on the verdict.*