## J. Q. PROFILET *v.* HALL & HILDRETH.

There is a distinction to be observed between those effects of a traveler, which are not immediately requisite to his comfort, and which the law requires him to deposit with the inn-keeper or his servant, in order to hold such inn-keeper responsible for their loss, and those which are essential to his personal convenience and which it is necessary to have constantly about him. So that if a guest had been personally notified to deposit at the office of the hotel or inn, his watch and other personal effects necessary to his comfort, this would not liberate the inn-keeper from responsibility, if they were not so deposited.

But where the traveler contributes by his own act or negligence to the loss of such things, the inn-keeper is released from liability.

APPEAL from the Sixth District Court of New Orleans, *Howell, J.*

*A. N. Ogden & Stansbury,* for plaintiff. *Clark & Bayne,* for defendants and appellants.

COLE, J. The plaintiff, a citizen of the State of Mississippi, alleges that he came to the city of New Orleans during the month of July, 1857, and stopped at the St. Charles Hotel, a public house of entertainment, kept by *Hall & Hildreth.*

That petitioner was given, in this hotel, room No. 124, and retired to rest therein.

That during the night of July 10th, 1857, the room occupied by him was entered, and the following articles, his property, were taken therefrom, and wholly lost to him : one gold watch, of the value of $225 ; one seal ring, worth $30 ; one masonic medal, of the value of $20 ; and one hundred dollars cash in bills of Louisiana banks.

The answer of defendants pleads the general denial, then specially admits, they are the proprietors of the St. Charles Hotel. That as such, they aver, they have provided a safe for the deposit of valuable articles, and have given notice to all the inmates and the visitors of their hotel, to place any valuable articles in this safe, and if not so deposited, they would not be responsible for them, if lost.

That plaintiff had due notice of this fact, before he took his lodgings in the hotel, and was so bound thereby.

The District Judge was of opinion that the possession of the money and the loss thereof, were not established, and rendered a judgment for $225, the value proved upon the trial of the watch, ring and medals.

Defendants have appealed.

Laws have been made in different countries and periods, regulating the obligations of keepers of inns and hotels.

The Spanish law rendered the keepers of inns and hotels responsible for " every thing which travelers, either by sea or land, put into inns or taverns, or ships that navigate the sea or rivers, *to the knowledge of the owners* thereof, or of *those that act* in their places," which was lost through their neglect, fraud or other fault, or if were stolen " by any persons who came with the travelers."

This law, however, limited the liability of inn or hotel keepers in certain cases. The first is, where they tell the traveler, before they receive him, to take care of his own effects, as that they would not be responsible for them, if they should get lost.

The second is, where they show him, before they receive him, a trunk or

chamber, saying, " if you choose to stay here, put your things in that trunk or room, and take the key into your own keeping."

The third is, where the effects are lost by some fortuitous event, as by fire, &c. Partida Fifth, title 8, law 26, vol. 2, p. 744.

The Spanish law seems to have held them liable, when it was to their knowledge, or to that of their agents, that the traveler had put property in their inns or hotels.

The civil law declares, that there is formed between the inn-keeper and traveler, an agreement, in most cases tacit, by which the inn-keeper obliges himself to the traveler to lodge him, and to take care of his baggage, and other equipage ; and the traveler, on his part, binds himself to pay his charges.

This law forces inn-keepers to take the same care, as if they were expressly paid for watching the goods, and declares that this obligation is an accessory to the commerce in which they are engaged, and that it is for the interest of the public, considering the necessity under which travellers are to trust inn-keepers, that they be bound to an exact and faithful care of the things committed to their custody, and that they be made answerable even for thefts. For otherwise they might, with impunity commit thefts themselves. Domat's Civil Law, Cushing's edition, vol. 1, No. 1172 to 1178.

The common law obliges the inn-keeper to keep safely all such things as his guests deposit *within his inn*, and Sir William Jones, in his work on the law of Bailments, quotes *Cayle's case*, 8 Rep. 33, § 4, where it was held that this obligation exists, " although the guest doth not deliver his goods to the inn-keeper to keep."

He further says, that the law of this case was recognized in *Bennett* v. *Mellor*, 5 Tenn. Rep. 273, where it was determined, that " if an inn-keeper refuse to take charge of goods till a future day, because his house is full of parcels, still he is liable to make good the loss, if the owner stop as a *guest*, and the goods be stolen during his stay."

Jones further declares, that if the inn-keeper fail to provide honest *servants* and honest *inmates*, his negligence is highly culpable, and he ought to answer *civilly* for their acts, even if they should *rob* the guests who sleep in his chambers., He gives as the reason, that travelers are obliged to rely almost implicitly on the good faith of inn-holders, who might have frequent opportunities of associating with ruffians or pilferers, while the injured guest could seldom or never obtain legal proof of such combinations, or even of their negligence, if no actual fraud had been committed by them.

He further says, that in all such cases, however, it is competent for the inn-holder to repel the *presumption* of his knavery, or default, by *proving* that he took *ordinary* care, or that the *force*, which occasioned the loss or damage, was truly irresistible. Jones on Bailments, pp. 95, 96.

Story, in his work on bailments, holds that a delivery of the goods into the custody of the inn-keeper, is not necessary to charge him with them ; for although the guest doth not deliver them, or acquaint the inn-keeper with them, still the latter is bound to pay for them, if they are stolen or carried away ; even though the person who stole them or carried them away, is unknown. If the goods are in his house, they are under his implied care, whether he knew it or not.

But if the inn-keeper requires of his guest, that he should put his goods into a particular chamber, under lock and key, and that then he will warrant their safety, and otherwise not ; and the guest, notwithstanding, leaves them in an outer court, where they are taken away, the inn-keeper will be discharged.

Story also says, that by the common law, as laid down in *Cayle's case,* (8 Rep. 32,) the inn-keeper is bound to keep the goods of his guest safe, without any stealing or purloining, but he adds, that this doctrine is to be understood with this qualification, that the loss will be deemed *prima facie* evidence of negligence ; and that the inn-keeper cannot exonerate himself but by positive proof that the loss was not by means of any person, for whom he is responsible.

It is also held, that the inn-keeper may be exonerated in many other ways ; as, for example, by showing that the guest has taken upon himself exclusively, the custody of his own goods, or has, by his own neglect, exposed them to peril. Story on Bailments, §§ 482, 483.

The same author holds, that if goods be stolen from the chamber of a guest, the inn-keeper is liable, although he received no notice that they were placed there. Story on Bailments, § 456 ; 8 Co. 32 ; Hayw. N. C. R. 41 ; 14 John. R. 175 ; 1 Bell's Com. 469 ; 1 Bl. Com. 430 ; 2 Kent. Com. 458 to 463.

The Civil Code of Louisiana provides, that an inn-keeper is responsible for the effects brought by travelers, even though they were not delivered into his personal care, provided, however, they were delivered to a servant or person in his employment. C. C. Art. 2937.

The doctrine of this Code seems to be, that the goods must be deposited with the inn-keeper or his agent, in order to hold the former responsible. The duties and obligations of inn-keepers are treated of under the head of the necessary deposit. C. C. 2935 to 2940 ; *Dunn & Yates* v. *Branner,* 13 An. 454.

It has, however, recently been held by us, in the case of *Pope* v. *Hall & Hildreth,* 14 An., that a guest is not bound to deposit with the proprietor of the hotel or his agent, his watch, which he may need to know the hour for a particular purpose, or a small sum of money which may be necessary to be used at any moment for his personal necessities.

We see no reason to differ from this doctrine, and do not think it necessarily conflicts with the Articles of our Code upon the subject of inn-keepers. For they may be interpreted as referring to those goods which are not essential for the personal convenience of the traveler.

Certainly, it could not be reasonably averred, that these Articles required the traveler to deposit at the office of the hotel, his trunk, containing his wearing apparel, which he might need at almost any moment. When, then, a trunk, watch or other articles of indispensable personal necessity are stolen, the hotel becomes liable, not under Articles 2935 to 2940 of the Civil Code, but under the tacit or acknowledged contract between the keeper of the hotel and his guest, that he shall exercise due diligence to protect his guest and his property whilst in his house, unless indeed he has been relieved of this liability by the negligence of the guest, or by some other lawful cause.

It is not necessary, in this case, to decide whether an inn-keeper can in any instance absolve himself from liability, by showing notice by placards posted up in his house.

It is sufficient for the present to say, that even if a guest had been personally notified to deposit at the office of the hotel or inn, his watch and his personal effects, of an indispensable necessity for the comfort of the traveler, this would not liberate the inn-keeper from responsibility, if they were not so deposited.

The only question that remains for our consideration is, whether the plaintiff was guilty of negligence to such a degree, as to free the defendants from liability.

For, as he constitutes himself in part the custodian of such personal effects if as he is not obliged to deposit, he is bound to exercise a certain personal supervision over them. The hotel keeper cannot be held liable, if he has done all in his power to protect these effects, and if he has placed it within the ability of the guest to prevent them from being stolen, and the guest has neglected to avail himself of such means. It cannot be expected at the present day, when hotels are constructed of immense capacity and capable of holding hundreds of persons that the proprietor should be obliged to have a guard at every door.

If the keeper of the hotel provides with a lock the room where his guest lodges, which opens inside and does not open from outside, it would be in the power of the guest to protect himself and the hotel-keeper would not be responsible, unless it were shown he was guilty of gross negligence in other respects.

For Article 2939 of the Civil Code declares, the inn-keeper " is not responsible for what is stolen by force and arms, or with exterior breaking open of doors, or by any other extraordinary violence.

The evidence, as to the key of room No. 124, is contradictory.

*Mr. Soria*, a witness for plaintiff, testifies, that about 9 o'clock at night, or later, on the 10th of July, 1857, he went with plaintiff to the office, and asked for the key of the room in which the latter had been previously and was then lodging ; that the reply from *Mr. Hitchcock*, or the person then officiating, was that there was no key to that room. Witness is not positive as to the name of the person who gave this reply, but thinks it was *Hitchcock*.

*Mr. Hitchcock* testifies, he was at the town of Nahant, Massachusetts, from June to November, 1857.

*D. L. Mudge* testifies, he was a Clerk in the St. Charles Hotel in July, 1857 ; that he and *Mr. Hildreth* had charge of the office where the keys of the rooms are kept, when not in the door ; that plaintiff arrived at the hotel on the 9th of July, at tea-time, and received the key of his room, 124 ; that during the night of the 9th, he had a friend lodging with him and had an extra breakfast on the morning of the 10th, and no complaint was made at the office of the want of a key for plaintiff's room. That if a call had been made for a key, one would have been furnished in a few moments by the carpenter, upon an order from the office.

He further testifies, that on the evening of the 10th, plaintiff came in with three or four other gentlemen, about eleven o'clock at night. All of the party seemed to be intoxicated, and one of them asked, if plaintiff's key was in the box. Witness looked, and seeing it was not, said he supposed that plaintiff had left it at the room, or had it with him.

The party went up stairs and the witness heard nothing more of them, except that a boy was sent down for liquor, and witness had to get bar checks for the boy, and no mention was then made of the want of a key, and witness heard nothing of any complaint until next morning.

Upon his cross examination, he says he cannot swear positively that he handed plaintiff the key on the night of his arrival, but feels confident that he gave him the key, as there was no complaint of the want of one until the next night, when asked for by *Mr. Soria.*

*Mr. Hitchcock* testifies, that the carpenter of the hotel keeps blank keys on hand, and, by examining the locks of the doors, can file the appropriate wards, and fix a key in the lock, in some ten minutes. From the very frequent occurrence of the carrying away, by guests of the hotel, the keys, as well as carrying them with them all the time they are not staying at the hotel, instead of depositing them at the

office, when they leave their rooms, it is, therefore, necessary for the carpenter to keep these blank keys. That if plaintiff had applied for a key, and there had been none in the office for him, a key would have been fitted in ten minutes and furnished to him.

*Soria* testifies, that he told the servant who went for the liquor, to bring up the key of the room, and that, on his return, he said a carpenter was then fitting a key for the room. That the waiter shortly afterwards brought up a card from *Mr. Lacoste*, and witness again asked the waiter for a key, who replied, that there was none except the pass-key, which would only lock the door from the outside.

It appears from the testimony of *Mudge*, that no application was made by these two servants to him for the key. It was certainly an act of negligence to depend upon the servants, instead of going to the office to get the key. If plaintiff had done this, he would not have lost his effects.

But it appears from the testimony of *Soria*, that he, plaintiff and some other gentlemen, had gone on the night of the 10th of July, from the last train of steam cars of the Pontchartrain Railroad to the St. Charles Hotel. They had gone to the lake by the four or five o'clock train of cars, and during their stay there had some champagne. Upon their arrival at the hotel, plaintiff insisted that witness should stay all night with him. Witness wound up plaintiff's watch, because he had put him to bed; he was partially asleep, and was somewhat under the influence of the liquor he had drank.

*Mr. Lewis*, a witness of plaintiff, testifies, that he was with the party to the lake, and was at plaintiff's room at the hotel on the night of the 10th of July; that plaintiff was affected by the liquor he had drank, and was lying on the bed, but had not been undressed.

It thus appears, that plaintiff was not in a condition to protect himself or to exercise the most ordinary vigilance.

Instead of depending upon himself, and taking proper care of his personal effects, he was obliged to confide in another.

*Mr. Soria* declares, that he attempted to secure the door in the best way he could, drew his bed cot against the door, as he thought, and put a chair there, but in the morning, when he woke up, he found that he had not pulled the bed far over enough, and had just left space enough for the door to be opened, and to admit an ordinary sized man without disturbing witness or the bed.

It thus appears, that the friend of plaintiff did not manifest sufficient care in seeking to protect him.

Witness also states, that he laid the watch of plaintiff on the bureau, that the ring of plaintiff was attached to the watch-guard, and also his masonic medal.

Upon waking in the morning, he found that the watch, ring and medal were gone.

It was an act of negligence to leave the watch upon the bureau. It would have been more prudent and just as easy to have concealed it under the mattress, or in some part of the room.

We are of opinion, if plaintiff had been sober, he might either have procured a key or have so concealed his effects, that they would not have been lost.

His state of intoxication raises the presumption of the omission of that care which he was bound to bestow for his own protection. If he had not been under the effect of liquor, he might have been awakened by the noise of the robber in entering the room. His condition may have induced some one to attempt the robbery.

Under all the circumstances of this case, we think that plaintiff ought not to recover.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be avoided and reversed ; and that there be judgment in favor of defendants against the claim of plaintiff, and that plaintiff pay the costs of both courts.