## Case No. 7,335.

### The JOHN BROOKS.

[1 Hask. 439.] [1]

District Court, D. Maine. Sept., 1872.

Charles P. Mattocks and Edward W. Fox, for libellant.

Almon A. Strout, for claimants.

FOX, District Judge. This steamer is one of the regular lines between this city and Boston, owned by the Portland Steam Packet Company, daily employed as a common carrier of freight and passengers. The libellant is a shipmaster, resident at Boothbay in this district, in command of a ship in the South American trade owned by R. Lewis & Co. of this city. He has testified as a witness, and the court is not aware of any reason, either from his appearance or the testimony in the cause, why his statements as to his loss should not be credited.

On the night of August 15, at Boston, he took passage on this boat for Portland, paying at the captain's office $1.50 for his passage and $2.00 for a stateroom, the key of which he received. No other person occupied the stateroom with him. Soon after the steamer left Boston, he went to his stateroom and deposited in the upper berth his overcoat and then returned to the saloon, which extends nearly the whole length of the upper deck, and from which entrance is had to the staterooms; the upper panel of the stateroom doors are of ground glass, through which light from the saloon is obtained for the staterooms. About nine the libellant returned to his stateroom, and he swears positively that he locked the door, the lock being on the inside of the door, but he admits that he did not bolt the door, as he did not notice the bolt upon it. He counted his money in

1 [Reported by Thomas Hawes Haskell, Esq., and here reprinted by permission.]

the stateroom and found he had $306 in American currency, and $2 or $3 in South American scrip. All the money was placed in his wallet in the pocket of his pantaloons, which before retiring he hung upon the clothes-hooks fastened for that purpose to the partition; he secured the window, which was found in that condition the next morning. He occupied the lower berth and fell asleep in about half an hour, but was awoke in the course of the night, as he states, by a noise in the adjoining room, and being afraid of robbers he removed his pantaloons from the hooks and threw them into the upper berth; after this he slept until the boat arrived at Portland. On examining his pantaloons, his wallet was gone and the door of the room was unlocked, the key was in the lock and although careful search was made, no trace of money or wallet could be found, and as the company declined to make him any restitution, he has instituted this proceeding in rem for the recovery of the money thus lost. The libellant states that the morning after the loss the end of the key of the stateroom showed signs of abrasion, as by forceps, but in the trial the key was produced and nothing of the kind could be detected upon it by an experienced locksmith.

The answer denies all liability for money retained by a passenger about his person, although he occupies a stateroom provided for him by the boat as a sleeping apartment, and secondly alleges that the negligence of the libellant was the cause of the loss, by his not bolting the door of his stateroom on retiring to rest.

It is shown that there was a suitable brass bolt on the inside of the stateroom door, in plain sight, on the white casing about five inches above the lock, which would have afforded protection against access to the room if the libellant had made use of it. which it is admitted by him he did not do. as he did not notice it. Two watchmen were on duty in the saloon until ten o'clock, at which time all but one of the gas burners to each chandelier in the saloon were extinguished, leaving it light enough however to read in the saloon, and at that hour most of the passengers retired to their berths or staterooms, and but one watchman was then kept on duty in the saloon for the remainder of the trip. The watchmen both testify that their orders were to move around the saloon, keeping strict watch, and that on this night they did their duty, and no one, to their knowledge, entered the stateroom of the libellant, and that during a portion of their beat they were not in sight of the door.

The doctrine of the common law, as formerly stated was, that the common carrier is responsible for all losses, except those occasioned by the act of God, or the king's enemies; but this rule, in practice, has always been understood not to cover any losses which arise from the personal neglect, wrong, or misconduct of the owner or shipper of the prop-

erty, nor from damages arising from any inherent defect in the article delivered to be carried. Story, Bailm. 431.

In Pennsylvania Ry. Co. v. Aspell, 23 Pa. St. 149, Black, C. J., says, "It has been a rule of law from time immemorial, and it is not likely to be changed in all time to come, that there can be no recovery from an injury caused by the mutual default of both parties. When it can be shown that it would not have happened, except from the culpable negligence of the party injured, concurring with that of the other party, no action can be maintained. * * * A party who violates a contract is not liable any more than one who commits a tort for damages which do not necessarily or immediately result from his own act or omission; in neither case is he answerable for the evil consequences which may be superadded by the default or negligence or indiscretion of the injured party. There is no form of action known to the law (and the wit of man cannot invent one) in which the plaintiff will be allowed to recover for an act not done or caused by the defendant, but by himself."

These remarks were made in a case where damages were sought to be recovered by a passenger for a personal injury sustained by him whilst traveling on the railroad, and are understood to be a correct exposition of the rule of law relative to contributory negligence in all cases where damages are claimed from a carrier, either for personal injuries by the passenger, or for the loss of his property in charge of the carrier.

In Purvis v. Coleman, 21 N. Y. 117, it is laid down that it is the well settled law of New York, "that if the plaintiff's negligence has caused or contributed to the loss or injury, an action against the carrier cannot be maintained."

The tendency of the modern decisions is to place the responsibility of inn-keepers upon the same grounds and to the same extent as that of common carriers; for it has been decided in England, as well as by many of the state courts in this country, that an inn-keeper, although guilty of no negligence, is liable for the loss or injury of the goods of his guests, not arising from the negligence of the guest, the act of God or the public enemies. Richmond v. Smith, 8 Barn. & C. 9.

The rule as declared by Erle, J., in Cashill v. Wright, 6 El. & Bl. 899, which was an action against an inn-keeper is, that an inn-keeper "is liable as for a breach of duty, unless the negligence of the guest occasions the loss in such a way as that the loss would not have happened if the guest had used the ordinary care that a prudent man may be reasonably expected to have taken under the circumstances."

In Fowler v. Dorlon, 24 Barb. 388, the court say, the inn-keeper can repel the presumption of liability, in case of loss, "by showing that the loss is attributable to the personal negligence of the guest himself. Gross negligence need not be shown. It is enough to exonerate

the inn-keeper, if the guest has, by his own neglect or imprudence, exposed his goods to peril."

In Profilet v. Hall, 14 La. Ann. 527, the language is, "If the keeper of a hotel provide with a lock the room where his guest lodges, which opens inside and does not open from the outside, it would be in the power of the guest to protect himself, and the hotel keeper would not be responsible unless it were shown he was guilty of gross negligence in other respects."

In the case of Shaw v. Berry, 31 Me. 482, Mr. Justice Tenney delivered a very full and learned opinion on the question of the liability of inn-keepers, in which he held the law to be well settled, "that the inn-keeper is bound to keep the goods and chattels so that they shall be actually safe, inevitable accidents, the acts of public enemies and the owner of the goods and their servants excepted." On page 483, he says, "The inn-keeper is not chargeable, when the loss happens through the negligence of the guest or those for whom he is responsible." And the same principle is stated as the law in Mason v. Thompson, 9 Pick. 280.

It has not escaped the attention of the court that in Calye's Case, 8 Coke, 32, it is stated "that it is no excuse for the inn-holder to say that he delivered the key of the chamber to his guest in which he is lodged, and that he left the door open;" and that this dictum has been many times since cited with the approval of courts of high authority. Burgess v. Clements, 4 Maule & S., 306, and Morgan v. Ravey, 6 Hurl. & N. 265. In the latter case it appeared that the guest did not use a night bolt on the door of his chamber, although his especial attention was called to it by a printed notice in the chamber, and he obtained a verdict against the inn-keeper for the value of certain articles stolen from the chamber while he was asleep, the jury having been instructed that it was for them to say whether he was guilty of negligence in not reading the notice or in not locking the door.

I agree with the judge at nisi prius, that it was a question for the jury whether the plaintiff was guilty of negligence; but I cannot approve of the finding of the jury that the plaintiff was not guilty of negligence.

The language taken from Coke, as it seems to me, must mean that by receiving the key of his chamber the guest did not thereby assume the entire charge and custody of his goods, and exonerate the inn-keeper from all liability therefor, but that there was still a duty remaining upon the inn-keeper to bestow proper care and attention to the safety of the goods of his guest and provide honest servants, etc., and that if he failed in this respect, and thereby the goods were stolen by his servants or others who should not have been admitted to the inn, the inn-keeper still remained chargeable.

I cannot conclude that when the negligence of the guest was the principal cause of the loss that the inn-keeper was to be considered

as an insurer against such negligence. If such is to be deemed the effect of Coke's language, it has so often since his day been overruled, that it cannot now be regarded as law.

In the case now before the court, the libellant admits he did not notice the bolt on his door and therefore made no use of it; it was in plain sight, of brass on a white ground, and to a person whose attention was given to the matter of properly securing his door against intruders, it could not well escape his notice, the room being well lighted.

A passenger, who should on retiring leave the key of his stateroom on the outside of the door when not protected with a bolt, thereby indicating to any depradator that the room was not secured against him, certainly would have no great claim for redress if a thief should accept his invitation and enter and help himself to the property of such passenger. So, too, if a passenger, when proper appliances were provided, should neglect to make use of any of them, or in any way to secure his door in case of loss, such neglect ought to exonerate the carrier from liability if he has taken reasonable precautions outside of the stateroom by watchmen to prevent the loss of property; and when both bolt and lock are placed on the inside of a door, in the opinion of the court, it is a plain manifest warning to the passenger that the lock alone will not afford him adequate security, but that additional precautions are requisite, and that for this purpose a bolt is provided as a security against intruders. Certainly a bolt is much more sure and effectual than an ordinary lock, as it can not be reached from the outside without violence and noise and breaking of the door which must attract the attention of the watch on duty in any portion of the saloon. Having thus cautioned and warned passengers by placing the bolt on the inside of the door where with ordinary care it must be seen, I hold that a carrier has a right to expect a passenger to use the same for his security and protection, and that he is guilty of negligence in not doing so, and if by such negligence a thief enters his stateroom and carries away his property and he thereby sustains a loss which would not have been incurred by him if he had bolted his door, he has no just cause of complaint against the carrier, if the latter had done all that could be reasonably demanded of him to prevent such losses. The passenger has no right to expect that a guard will be placed in front of every stateroom door; and in the present instance, if this door had been bolted, in case of any attempt to enter from the saloon, it must have been detected by the watch on duty.

The carrier being thus released from accountability by reason of the negligence of the passenger, it is not necessary for me to determine whether he is or not accountable under other circumstances to a passenger for money stolen from his stateroom while asleep.

In 1866, this question was very thoroughly examined by the supreme court of Michigan in McKee v. Owen, 15 Mich. 115, Mr. Justice Christiancy holding that the carrier was accountable, Cooley, J., concurring. Mr. Justice Campbell delivered an opinion adverse to the plaintiff, in which the chief justice concurred, and as the court was equally divided the plaintiff did not prevail. All of the authorities bearing upon this question are referred to in these learned opinions, with the exception of Walsh v. The H. M. Wright [Case No. 17,115]. In that case McCaleb, J., in the district court of Louisiana, held that the carrier was liable for the contents of a valise stolen from a passenger's stateroom while she was asleep, and this decree was affirmed by Campbell, J., on appeal to the circuit court.

In Abbott v. Bradstreet (1864) 55 Me. 530, the supreme court of this state decided that the owners of a steamboat are not liable for money stolen from the pockets of a passenger thereon, when it does not appear that the robbery was perpetrated by one of the employees of the boat. An examination of the record in that case discloses that at the time of the robbery the passenger was in his berth in the common cabin and not in a private stateroom.

In this diversity and uncertainty, this court may well refrain from expressing any opinion upon this point, as the other objection is decisive of the cause. Libel dismissed with costs.