ALMIRA HANCOCK, Appellant, v. GEORGE W. RAND, JOHN H. RAND and THOMAS B. RAND, Respondents.*

*Innkeeper and guest — when that relation exists.*

In November, 1873, W. S. Hancock applied to the defendants, who were keeping a public inn and hotel in the city of New York, for rooms for himself and family. An arrangement was made by which certain rooms connected with the hotel were assigned to the said Hancock and his family from that time until the following summer, provided he was not sooner ordered away on military duty; he agreeing to pay $365 per month if meals were furnished from the restaurant, or to pay $265 per month for rooms, and in that case to pay extra for what he ordered from the restaurant. Hancock and family entered into occupation of the rooms under the said arrangement. During the first month the meals were regularly furnished from the restaurant and $365 was paid; thereafter $265 was paid for the rooms, and the meals ordered at the restaurant were paid for in addition to that sum. In March, 1874, certain articles of personal property were stolen from the rooms.

*Held,* that the relation of innkeeper and guest existed between Hancock and his family and the defendants, and that the latter were liable for the articles so stolen.

Appeal from a judgment in favor of the defendants, entered upon the report of a referee.

This action was brought to recover from the defendants, who were the proprietors of the St. Cloud hotel, in the city of New York, the value of certain articles of jewelry stolen from the plaintiff while she was, as she alleged, a guest at that hotel. The referee found in favor of the defendants, on the ground that the relation of inkeeper and guest did not exist between the parties.

This is an appeal by the plaintiff from a judgment entered against her in the above action upon the report of the referee.

*M. T. McMahon,* for the appellant. The referee erred in holding as a question of law that a special contract, merely fixing the time of the sojourn of an inmate of a hotel or inn, and the price to be charged him, changes the character of such inmate from guest to boarder. (*Pinkerton* v. *Woodward,* 33 Cal., 557; *Berk-*

---

* The cases of *Winfield S. Hancock,* appellant, against the same defendants (respondents), and *Winfield S. Hancock,* administrator, etc., of *Ada E. Hancock,* against the same defendants (respondents), were argued with the above case, and in each case the judgment was reversed and a new trial was ordered before a referee, to be selected and appointed by the court, unless the parties should elect to retry the cause before the same referee.

*shire Woolen Co.* v. *Proctor*, 7 Cush., 417; *Norcross* v. *Norcross*, 53 Me., 169, *Walling* v. *Potter*, 35 Conn., 183; *Lima* v. *Dwinell*, 7 Albany Law Jour., 44; 5 Tenn., 273; 5 Barb., 568; *Allen* v. *Smith*, 12 C. B. [N. S.], 618; *Kisten* v. *Hildebrand*, 9 B. Monroe, 72; Bac. Abr., Inns and Innkeepers, c. 5; Story on Bail., sec. 177.) A contract between a landlord and guest regulating the price of lodgings and meals cannot be held to limit the legal liability of either. (*Richmond* v. *Smith*, 8 Barn. & Cress.; *Wells* v. *Steam Navigation Co.*, 2 N. Y., 204; *Gould* v. *Hill*, 2 Hill, 623; *Gaines* v. *Union Trans. Co.*, 28 Ohio State R., 418; *Adams Express Co.* v. *Nock*, 2 Duval, 563; *Express Co.* v. *Moon*, 39 Miss., 832; *Levering* v. *Union Trans. Co.*, 42 Mo., 94; *Adams Express Co.* v. *Haynes*, 42 Ill., 93; *Grennill* v. *Cook*, 3 Hill, 488, BRONSON, J.; *Ingalsbee* v. *Wood*, 36 Barb., 452; aff'd. 33 N. Y., 577; *Carter* v. *Hobbs*, 12 Mich., 52; Story on Bailments, 423, sec. 476 [8th ed.]; 4 Humph., 179; *Burgess* v. *Clements*, 4 Maule & Selwyn, 206; *Fell* v. *Knight*, 8 M. & W., 269; *Farnsworth* v. *Packard*, 1 Stark. R., 249; Edw. on Bailments, 394 [1st ed.], and cases cited ; *Ambler* v. *Skinner*, 7 Robt., 561.)

*S. W. Fullerton*, for the respondents. The plaintiff intestate was occupying the rooms under a stipulated contract as to time, price, etc., at the time of the loss. This made her a boarder and not a guest. (*Thompson* v. *Lacy*, 3 Barn. & Ald., 283; *Parkhurst* v. *Foster*, 1 Salk., 387; Story on Bailments, sec. 477; *Dausey* v. *Rich*, 2 Ellis & Bl., 144; *King* v. *Ives*, 7 C. & P., 213; *Wintermute* v. *Clark*, 5 Sandf., 247; *Cromwell* v. *Stevens*, 3 Abb. [N. S.], 34; *Stewart* v. *McCready*, 24 How., 62; *Bennett* v. *Ditson*, 5 Term, 273 ; *Manning* v. *Wells*, 9 Thomp., 746; *Ingallsbee* v. *Wood*, 33 N. Y., 577; *Mowers* v. *Fethers*, 61 id., 34; *Seward* v. *Seymour*, Anthon's Law Student, 51; *Willard* v. *Reinhard*, 2 E. D. Smith, 148.)

INGALLS, J. :

The following are the findings of fact and conclusions of law of the referee :

First. That during all the times hereinafter mentioned the defendants were copartners, carrying on business as the proprietors

and keepers of the hotel known as the St. Cloud hotel, in the city of New York.

Second. That in the month of November, 1873, Winfield S. Hancock applied to the defendants for rooms at said hotel for his family, consisting of himself; his wife, Almira Hancock, the plaintiff; his daughter, Ada E. Hancock, since deceased, and also his niece. That thereupon an arrangement was made between the said Winfield S. Hancock and the defendants, whereby the latter agreed to and did let to the former, for the use of himself and his said family from that time until the following summer, unless the said Hancock should be sooner ordered away on military duty, certain rooms, consisting of the whole of the second floor in a house adjoining the said hotel building, but used by the defendants in connection therewith ; that the price agreed upon for said rooms was $385 per month of thirty days, with meals to be furnished by the defendants to said Hancock and family from the restaurant of said hotel, or $265 per month without meals, and the said Hancock to pay for what he and his family ordered as meals from said restaurant in addition, leaving it for the said Hancock to determine under which branch of said agreement he would occupy said rooms. That pursuant to this agreement said Hancock and family entered upon the occupation of said rooms on the 11th day of November, 1873, and continued so to occupy them until about June 12, 1874.

That for the first month of said period the said Hancock elected to and did occupy said rooms and have meals furnished from said restaurant, and paid therefor the sum of $385, pursuant to the terms of said contract.

That at the expiration of said month the said Hancock elected to and did occupy said rooms with his said family, from that time until about June 12, 1874, under the other branch of said agreement, which required him to pay therefor the sum of $265 per month, and that he did pay that price therefor during said period, and paid for what he and his family ordered as meals from said restaurant in addition thereto, pursuant to the aforesaid contract.

That the prices which the said Hancock thus agreed to and did pay for said rooms, were less than the usual prices charged by the defendant to transient guests for like accommodations.

*Third.* That the notices required by law were not posted in the said rooms so occupied by the plaintiff and her family during such occupancy, and the plaintiff had no actual notice that a safe was provided by the defendants for the safe keeping of money, jewels or ornaments.

*Fourth.* That in the month of March, 1874, the plaintiff lost from her said room certain personal property of the value of $2,952.

*Fifth.* That the defendants were not guilty of any actual negligence in respect to such loss.

As matters of law :

1. That the plaintiff was not a guest of the defendants at said hotel within the meaning of the term.

2. That therefore the defendants are not liable to plaintiff for the loss mentioned in the complaint.

3. That the defendants are entitled to judgment herein, dismissing the plaintiff's complaint with costs of suit.

We are satisfied that the referee erred in the following conclusion of law : " That the plaintiff was not a guest of the defendants at said hotel within the meaning of the term." This presents the controlling question upon this appeal. The pleadings and evidence establish the fact that the defendants were, at the time the plaintiff entered the house, innkeepers ; they kept the St. Cloud hotel in the city of New York, which was not a mere boarding-house, but was conducted for the reception and entertainment of all who chose to visit it. The defendants were therefore insurers, and liable for the property stolen, if the plaintiff was a guest. (*Ingallsbee* v. *Wood*, 33 N. Y., 577 ; *S. C.*, 36 Barb., 452.) In November, 1873, General Winfield S. Hancock applied to the defendant, and secured for himself and family, including the plaintiff who is his wife, the occupation of rooms within the hotel, together with meals to be furnished by the defendants within such hotel, either at the restaurant which was kept as a part of the hotel, or served in the rooms, for which he was to pay as follows : If the meals were furnished from the restaurant, the sum of $385 per month, of thirty days ; otherwise $265 per month, and the price of the meals ordered in addition, such arrangement to continue until the summer following unless General Hancock should

be sooner ordered away upon military duty. While thus occupying the rooms, the property in question of the plaintiff was stolen therefrom.

We are of the opinion that the facts of this case establish clearly the relation of innkeeper and guest. The plaintiff had no permanent or fixed residence elsewhere, and even her stay at the hotel in question depended for its duration upon the pleasure of the government, as her husband was liable to be ordered to military service at any moment. The St. Cloud hotel was kept, as the name indicated, as a hotel in every sense of the term, and was clearly distinguishable from a mere boarding-house. All the rights and privileges which General Hancock secured by the arrangement with the defendants were to be, and actually were, enjoyed within such hotel. We cannot adopt the theory that ascertaining and fixing the price which was to be paid for the accommodations, and specifying the probable duration of the stay at the hotel, necessarily had the effect to deprive the plaintiff of the character of guest. The effect of such a theory, reduced to practice, would be to deprive the visitor at a hotel of the character of guest, if he took the precaution to ascertain in advance the price which would be charged for his entertainment, whether he contemplated a stay of a day or a week. The mere fact that the price charged at hotels is made to depend upon the length of the stay of the visitor, cannot be controlling upon the question whether he should be regarded a guest. It is well understood that hotels are now conducted upon a system essentially different from that which prevailed a century ago, and hence the rules of law which must govern should, in some degree, conform to such change. It is comparatively of recent origin that a class of hotels have adopted two modes by which to accommodate visitors ; one is to provide a room and furnish meals, at a general table, at a fixed price , the other is to provide a room at a specified sum, and furnish meals when ordered, the price of which to depend upon quantity and quality.

Although the decisions have not been uniform upon the question whether fixing in advance the price to be paid, and the duration of the stay of the visitor at a hotel, has the effect in law to constitute such person a mere boarder or lodger, and to deprive such

visitor of the character of guest, yet our examination of the subject has led to the conclusion that regarding hotels as they are now conducted and patronized, such an arrangement does not necessarily have the effect to prevent the relation of innkeeper and guest, and the obligations which attach thereto. In *Parker* v. *Flint* (12 Mod. Rep., 255), Lord HOLT remarks: " If one comes to an inn and makes a previous contract for a stated time, and does not eat or drink there, he is no guest but a lodger, and as such is not under the innkeeper's protection. But if he eats or drinks there it is otherwise ; or if he pays for his diet there and does not take it there." In *Pinkerton* v. *Woodward* (33 Cal. Rep., 557), the court say : " A traveler who enters an inn as a guest does not cease to be a guest *by proposing to remain a given number of days, or by ascertaining the price that will be charged for his entertainment;* or by paying in advance for a part or the whole of his entertainment ; or paying for what he has occasion, as his wants are supplied." *Berkshire Woolen Co.* v. *Proctor* (7 Cush., 417) contains the following : " The simple fact that Russell made an agreement as to the price to be paid by him by the week would not, upon any principle of law or reason, take away his character as a traveler and a guest. A guest for a single night might make a special contract as to the price to be paid for his lodging, and whether it were more or less than the usual price, it would not affect his character as a guest." (See, also, *Norcross* v. *Norcross*, 53 Me., 169; *McDaniels* v. *Robinson*, 26 Vt., 316; *Walling* v. *Potter*, 35 Conn., 183; *Lima* v. *Dwinelle*, Alb. L. J., 44 [vol. 7].) The arrangement under which General Hancock and his family entered the hotel, and their occupation were in all respects consistent with the purpose for which the hotel was established, and their character of guests.

Our attention has been directed to a class of cases, of which *Mowers* v. *Fethers* (61 N. Y., 34) ; *Ingallsbee* v. *Wood* (33 N. Y., 577), are examples. These are clearly distinguishable upon principle from the case we are considering. In the first case it was held by a divided court, that the defendant did not become an insurer of the property kept for a particular business purpose. In the other, the court decided that Ingallsbee did not become a guest by simply leaving his horse and wagon to be

cared for at the hotel kept by Wood ; while he lodged and took his meals elsewhere. The distinction between an inn and boarding-house, and the rights and responsibilities which attach to each are in the main pretty clearly marked. One essential distinction is, that the keeper of a boarding-house is not compelled to accept an applicant for entertainment ; while the innkeeper under ordinary circumstances cannot refuse, and he becomes an insurer of the baggage of the guest ; and as a compensation for such obligation the common law creates a lien upon such baggage in favor of the innkeeper for the keep of the guest. While each possesses features which distinguish it from the other, some elements enter in which are common to both, and in examining the cases upon this subject, we are impressed with the conviction that expressions have been employed in some of the opinions not strictly accurate, or even necessary to the decision of the particular case, but which create embarrassment when sought to be applied in deciding other cases. The innkeeper not only has a lien upon the baggage of his guest, but by common consent is allowed to charge for the accommodation which he provides greatly in excess of that which is exacted for similar entertainment elsewhere, and one important reason therefor is that the visitor chooses to pay for the indemnity which he secures in case his baggage is stolen from the hotel. A careful examination of this case has convinced us that, upon the facts found by the referee, the plaintiff should have been regarded the guest of the defendants at their hotel, and as such entitled to recover the value of her property, which was stolen from the room occupied by her in such hotel. No notice was posted informing the plaintiff that a safe had been provided in which to deposit money and jewels. We cannot subscribe to the doctrine, which refuses to recognize as a guest a visitor at a hotel who occupies rooms and is furnished meals therein by the proprietor ; simply because the agreement which the law implies between innkeeper and guest is amplified by an express stipulation which fixes the price ; and specifies the duration of the stay of the guest. The law which renders the keeper of a hotel liable for the baggage of his guest which is stolen from the room assigned him, and which remains under the care and supervision of the landlord and the servants whom he selects, is

salutary, and should not be rendered substantially inoperative by adopting technical distinctions, which rest upon ingenious speculation rather than sound reason.

The judgment should be reversed and a new trial ordered before a referee to be selected and appointed by the court, unless the parties elect to re-try the cause before the same referee, costs to abide the event of the action.

Davis, P. J. and Brady, J., concurred.

Judgment reversed, new trial ordered before a referee to be appointed by the court, unless the parties elect to re-try the cause before the same referee, costs to abide event.